[No. 39209.   Department Two.   February 8, 1968.]

WILLIAM RAMSTEAD, *Respondent*, v. C. J. "CURLEY" HAUGE *et al., Appellants.**

*Reported in 437 P.2d 402.

*Albert & deMers, Douglas F. Albert* and *Joseph D. Mlad-inov,* for appellants.

*Elvidge, Watt, Veblen, Tewell & Venables, Duane Te-well,* and *Thomas A. St. Pierre,* for respondent.

HUNTER, J.—The defendants (appellants) C. J. "Curley" Hauge, Shirley Hauge, his wife, and Hauge Construction Company, appeal from a judgment finding them guilty of contempt for violating a temporary restraining order and assessing damages. The defendants will be referred to in the singular, or as Hauge.

The defendant, a general contractor, owns a parcel of land in the city of Kent on which he was erecting houses at the time this action was commenced. The land was unplatted. Through it ran what appeared to be a graded, gravel-surfaced public street, which connected the dedicated streets of Woodland Way and Maple Street. It appeared to be a continuation of Woodland Way. The distance across the defendant's property was approximately 640 feet.

The plaintiff (respondent) William Ramstead had prior business dealings with the defendant, as a result of which the defendant maintained that Ramstead owed him $650, which he was unable to collect.

On June 9, 1966, Ramstead was having a house moved by the Hurt Moving Company and the planned route, for which the city of Kent had issued a permit, included the apparent continuation of Woodland Way which crossed the defendant's property. It further appears from the record that neither Ramstead nor the mover realized that the route lay across private property. The moving party included Hurt's crew towing the house on dollies, and crews from the electric and telephone companies who had to clear away utility wires along the route.

Shortly after the moving began, the house passed the defendant's office in downtown Kent and he talked with Mr. Hurt and learned of the proposed route. Four or five hours later, in the afternoon, the house reached the intersection of Woodland Way and Kimberly Avenue. Kimberly

Avenue was the last point at which the house could have turned off Woodland Way in order to avoid crossing the defendant's property. The testimony reveals that the defendant saw the house coming and that just before it reached his property line, he personally moved two pickup trucks that were blocking the roadway, apparently so that the passageway would be clear. Hurt testified that the defendant walked in front of the moving crew and appeared to be guiding the house around obstacles. However, once the house was well onto his property, its path was blocked by a large truck, which Hauge refused to move. He informed the moving crew that he would not permit them to go any further unless he was paid the $650 he claimed Ramstead owed him. He described this as a "toll fee." The mover testified that defendant seemed "jubilant and sort of happy" over the situation, "like a cat that swallowed a canary." It appears from the record that Ramstead then ordered the moving crew to turn the house around—a laborious process that involved jacking up the house on cribbing and reversing the dollies. Before the crew could finish this, the defendant told them that if they tried to remove the house the way it had come in he would block its path in that direction also. The crew left at about 4 p.m.

The record shows that the defendant had ditches dug around the house by a backhoe and that he also stationed vehicles in front and in back of the house. He filled in the ditches by Monday, June 13, but the city had in the meanwhile dug ditches of its own behind the house, in order to lay waterlines, and rearward progress was still blocked. The defendant wrote to Ramstead on June 13 demanding that the house be moved off the property. On Tuesday, June 14, the moving and utility crews came to attempt to move the house forward and Hauge personally obstructed their progress by driving a large truck in front of the house.

The plaintiff then obtained a temporary restraining order, which by its terms required Hauge to "fill in all holes and remove all obstructions" so that the house and

moving equipment could "move freely." The order was served on the defendant on June 20. The record further shows that the plaintiff went to the property with the moving crew on June 20 but found the house still obstructed. Between then and June 23, when the hearing began on the order to show cause why the temporary restraining order should not be made permanent, Hauge continued to park vehicles around the house in such a way that its progress was effectively blocked. At the hearing, the court also had before it an order to show cause why Hauge should not be found in contempt for violating the original temporary restraining order, and in addition the defendant's motion to quash the restraining order. At the conclusion of a 3½-day hearing the court entered findings of fact, conclusions of law and judgment on June 30, 1966.

The court held that the original restraining order was properly entered. It found that Hauge had willfully failed to obey that order and was in contempt of court; that Hauge had "deliberately and maliciously" entrapped the plaintiff's house in order to collect an alleged debt, causing the plaintiff damage; and that Hauge had invited the plaintiff onto his land and, consequently, that the plaintiff was not guilty of trespass. The judgment made provisions for the defendant to purge himself of contempt by permitting the house to leave his land by July 1, 1966, assessed damages against the defendant in the amount of $3,065 including $2,065 for the plaintiff's legal fees, retained jurisdiction of the case in the event there should be failure to comply with the judgment, and dismissed the defendant's counterclaim for trespass. The defendant appeals from the judgment.

It is first contended by the defendant that he should not have been found in contempt for violating the temporary restraining order. He argues that the order was not lawfully entered because its terms were so vague and indefinite as to leave him in real doubt as to what he should do in order to comply. This argument is without merit. It was clear from the order that the defendant was to remove any

obstacles that were in the path of the house on his property and leave the mover free to proceed.

The defendant next argues that the state was a necessary party to this contempt proceeding, under RCW 7.20.060, which provides:

> In the proceeding for a contempt, the state is the plaintiff. In all cases of public interest, the proceeding may be prosecuted by the district attorney [now prosecuting attorney] on behalf of the state, and in all cases where the proceeding is commenced upon the relation of a private party, such party shall be deemed a co-plaintiff with the state.

■ We have held, however, that in a civil contempt proceeding where the state was not joined as co-plaintiff, and no timely objection was made, this defect of parties is waived. *Cogswell v. Cogswell*, 50 Wn.2d 597, 313 P.2d 364 (1957). See *Keller v. Keller*, 52 Wn.2d 84, 89, 323 P.2d 231 (1958). The defendant failed to raise the issue of nonjoinder in the trial court, and under the rule of *Cogswell*, he has waived this objection.

■ The defendant argues that acting on advice of counsel in refusing to obey the temporary restraining order is a defense to his contempt. There is no merit in this argument. Advice of counsel is no defense to a civil contempt proceeding. *State ex rel. Porter v. First Judicial Dist. for Lewis & Clark Cy.*, 123 Mont. 447, 215 P.2d 279 (1950); *In re Pierce*, 54 Kan. 519, 38 Pac. 812 (1895).

■ The defendant further argues that the trial court could not compel him to permit Ramstead to use his private property, and claims that such an order is an unconstitutional taking of his property. Const. art. 1, § 16. We disagree. The defendant knew well in advance that the plaintiff intended to move the house along Woodland Way. The trial court found, and this finding is supported by the record, that the defendant did nothing to discourage this intention, but rather, that he encouraged the plaintiff to bring the house onto the private land. When the plaintiff, relying on the defendant's conduct, went onto the private portion of Woodland Way, the defendant suddenly announced that the

intrusion was wrongful and attempted to enforce the payment of a $650 debt, by detaining the house. This conduct cannot be countenanced by a court of equity. The defendant was seeking to profit from his own wrong. Under the circumstances, Hauge having invited the plaintiff to move the house across the property, and the plaintiff having incurred costs in reliance thereon, it was inequitable for Hauge not to allow the house to pass all the way across the property. The trial court in the exercise of its equitable jurisdiction properly averted this injustice.

The defendant argues that he was lawfully resorting to self-help in order to collect a debt. This argument is untenable. The defendant can in no way justify taking the law into his own hands in order to collect a debt in this manner.

The defendant next contends that the evidence does not support the trial court's findings that he violated the temporary restraining order, and that he invited or enticed the house movers onto his property. These findings of the trial court are clearly supported by the record, and will not be disturbed. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

The defendant contends that we should disallow the award for damages because Ramstead should have complied with the demand in the defendant's letter of June 13, and removed the house from the property by taking it out the way it came in. The answer to this is furnished by the record, which shows that removal of the house was still obstructed as of that date, and that the obstruction continued and was in existence at the conclusion of the hearing.

■ The defendant also contends that the trial court abused its discretion in awarding the plaintiff legal fees, in addition to the damages caused by the detention of the house. RCW 7.20.100 provides:

> If any loss or injury to a party in an action, suit or proceeding prejudicial to his rights therein, have been caused by the contempt, the court or judicial officer, in addition to the punishment imposed for the contempt, may give judgment that the party aggrieved recover of the defendant a sum of money sufficient to indemnify

him, and to satisfy his costs and disbursements, which judgment, and the acceptance of the amount thereof, is a bar to any action, suit or proceeding by the aggrieved party for such loss or injury.

The award of attorney's fees, under the authority of this section of the statute was proper, *Mathewson v. Primeau,* 64 Wn.2d 929, 395 P.2d 183 (1964), and we do not find the amount allowed to be unreasonable.

We find no merit in the defendant's remaining assignments of error. The judgment is affirmed.

FINLEY, C. J., HILL, HAMILTON, and NEILL, JJ., concur.

\*Reported in 437 P.2d 398.