[No. 42529.    En Banc.    September 27, 1973.]

*In the Matter of* A. FRANS KOOME.

*Christopher T. Bayley, Prosecuting Attorney, Sharon A. Finegold, Deputy, James E. Warme, Special Deputy,* and *Kenneth D. VanDerhoef* (of *Geraghty, Geraghty, VanDerhoef & Sawyer*), for plaintiff.

*Raymond J. Lee* and *Stanley E. Stone,* for respondent.

PER CURIAM.—This is a contempt proceeding.

In July 1972, a 16-year-old, unmarried, pregnant female, with the assistance of representatives of the Legal Services Center located in Seattle, petitioned the Juvenile Court for King County, of which she was a ward, for permission to obtain a therapeutic abortion. A hearing was held before the juvenile court at which time the juvenile's petition was opposed by her parents. At the conclusion of the hearing,

the juvenile court judge granted the petition and gave consent to the performance of an abortion.

Upon entry of the juvenile court order, the parents filed a petition with this court seeking review of the juvenile court action and for an immediate stay of the order entered in that action. On August 14, 1972, the application for the stay was granted pending a further hearing on the petition for a writ of certiorari then scheduled for determination by this court on August 17, 1972. Notice of the stay order was communicated by a representative of the Legal Services Center on August 14, 1972, to the juvenile and to the respondent, Dr. A. Frans Koome, who had been previously contacted relative to performing the abortion. On August 15, 1972, respondent performed an abortion procedure upon the juvenile.

Upon being advised of the action of the respondent and the juvenile, an investigation was directed to be made by the office of the Prosecuting Attorney for King County. Thereafter an affidavit confirming commission of the abortion on August 15, 1972, was filed, which resulted in the issuance of a show cause order directed to respondent, and a remand by this court to the superior court for an evidentiary hearing and a factual determination as to the extent of respondent's knowledge on August 14 and 15, 1972, of the entry of the stay order. At the conclusion of the evidentiary hearing, at which respondent and his attorney were present, the superior court found as a fact that respondent had knowledge of the entry of the stay order and performed the abortion procedure on August 15, 1972, despite that order. Upon return of the superior court's findings of fact, respondent duly appeared before this court by counsel, and by way of written brief and oral argument, in response to the show cause order as to why he should not be held in contempt.

Procedurally speaking, we treat this contempt proceeding as one in aid of our appellate jurisdiction under the general contempt provisions of RCW 7.20. *See Keller v. Keller*, 52

Wn.2d 84, 323 P.2d 231 (1958), and *State v. Estill*, 55 Wn.2d 576, 349 P.2d 210, 89 A.L.R.2d 1251 (1960), for an exposition upon the three categories of contempt proceedings in this jurisdiction. Respondent, however, has not and does not challenge the purely procedural aspects of the proceeding; hence, we are not confronted or concerned with such matters as the form of the affidavit prompting the issuance of the show cause order and the remand or the absence of the State of Washington as a designated party to the proceedings. RCW 7.20.040 and .060; *Ramstead v. Hauge*, 73 Wn.2d 162, 437 P.2d 402 (1968).

The primary thrust of respondent's response to the show cause order rests with the contention that he was not amenable to the stay order. He predicates this assertion on three grounds: (a) that the stay order was not in the form of an injunction or restraining order; (b) that he was not a party to the juvenile court proceeding or to the petition for a writ of certiorari seeking appellate review of that proceeding; and (c) that he never received a copy of the stay order, nor was he served with a copy, although he does not dispute the fact that he had notice and knowledge of the entry thereof.

We find no merit in respondent's principal contention.

■ A "stay order" or a "stay of proceedings," such as we are here concerned with is respectively defined in Black's Law Dictionary 1583 (4th ed. rev. 1968) as:

A stopping; the act of arresting a judicial proceeding by the order of a court. . . .

. . .

The temporary suspension of the regular order of proceedings in a cause, by direction or order of the court,

. . .

A stay order finds its genesis in the writ of supersedeas, originally an auxiliary process designed to supersede enforcement of a judgment or order brought up for review, thereby maintaining the status quo and preserving the fruits of the appeal should it prove successful. This court's authority to issue such an order, in aid of its appellate or

original jurisdiction, emanates from its inherent power and the state constitution,[1] and is implemented by ROA I-57(c) (1).[2] *Shamley v. Olympia*, 47 Wn.2d 124, 286 P.2d 702 (1955); *Northwestern Improvement Co. v. McNeil*, 98 Wash. 1, 167 P. 115 (1917); *Bier v. Clements*, 95 Wash. 505, 164 P. 82 (1917); *Campbell Lumber Co. v. Deep River Logging Co.*, 68 Wash. 431, 123 P. 596 (1912); *State ex rel. Barnard v. Board of Educ.*, 19 Wash. 8, 52 P. 317 (1898). Although restraining orders and injunctions sometimes partake of some of the aspects of supersedeas or stay orders, and the two processes are occasionally synonymously referred to, the two mediums of equitable relief are not, technically, identical judicial creatures.

A stay of proceedings or a supersedeas order normally operates upon and affects only parties or privies to the judgment, order, or decree of which a review is sought, and ordinarily may not be utilized to restrain the actions of persons who are not named in or privy to the stay order. 4A C.J.S. *Appeal & Error* § 668 (1957). Injunctive relief, on the other hand, may have a broader scope and reach.

The terms "privy," "privies," and "privity" have various meanings in differing contexts, *i.e.*, in relation to contracts, the doctrine of collateral estoppel, the doctrine of res judicata, et cetera. *See* 33A *Words & Phrases*, "Privity; Privy" 594 (1971). None of those in the cited reference, however, precisely relate to the nature of the proceedings and circumstances presently involved.

█ Here we have a putative physician-patient relationship undertaken for the purpose of performing an abortion

---

[1]Article 4, section 4 of the Washington State Constitution provides in part:

". . . The supreme court shall also have power to issue writs of mandamus, review, prohibition, habeas corpus, certiorari and all other writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction. . . ."

[2]ROA I-57(c) (1) provides:

"The chief justice may stay proceedings and condition the stay on petitioner posting a bond deemed sufficient to protect respondent from all damages that may be suffered by reason of the stay of proceedings."

upon an unmarried, pregnant minor, lawful culmination of which relationship and the purpose thereof depends upon a specific consent pursuant to a presumptively constitutional statute,[3] which, in turn, results in litigation giving rise to a stay order. Under these circumstances, we are satisfied there exists between the physician and the juvenile a sufficient relationship to and mutuality of interest in the subject matter of the litigation, and the ultimate outcome thereof, to give rise to a relationship of privity between them insofar as the operation and effect of an intervening stay order upon the proposed abortion be concerned, provided, of course, adequate notice and knowledge of the entry of the stay order be communicated to the respondent.

Having thus resolved the first two prongs of respondent's principal contention, *i.e.*, the nature of the stay order and its relationship to respondent, we turn to the third prong, the adequacy of respondent's notice and knowledge of entry of the stay order.

As heretofore indicated, respondent does not dispute receiving notice of the stay order. Indeed, the superior court found, and such finding is amply supported by the evidence, that on August 14, 1972, respondent received three notices by direct telephonic communication from representatives of the Legal Services Center who were acting as legal counsel for the juvenile. On the first occasion, respondent was advised that a stay order could be entered and that respondent might be subject to criminal prosecution if he proceeded with the proposed abortion in the face of such an order. On the second occasion, respondent was notified that a stay order had in fact been entered, and that he

---

[3]RCW 9.02.070 provides in pertinent part:

"A pregnancy of a woman not quick with child and not more than four lunar months after conception may be lawfully terminated under RCW 9.02.060 through 9.02.090 only: (a) with her prior consent and, if married and residing with her husband or unmarried and under the age of eighteen years, with the prior consent of her husband or legal guardian, respectively, . . . Any physician who violates this section or any regulation of the state board of health issued under authority of this section shall be guilty of a gross misdemeanor."

should seek legal advice. On the third occasion, respondent was urged to contact the juvenile court before proceeding with the abortion if he wished confirmation of the stay order.

■ We have heretofore held, in the context of contempt proceedings relating to alleged disobedience or defiance of a lawful judgment, decree, order, or process of a court by one directly bound thereby or in privity thereto, that it is unnecessary that the one charged be personally served with a copy of the order. It is sufficient if the alleged contemnor has knowledge of the order and its legal effect. *State ex rel. Roseburg v. Mohar*, 169 Wash. 368, 13 P.2d 454 (1932).

In the instant case, we are convinced that respondent had adequate notice of the entry of the stay order and was fully cognizant of the legal consequences of that order as it related to his performance of an abortion upon the juvenile on August 15, 1972. Despite such notice and knowledge, the record clearly sustains the conclusion that respondent intentionally, personally, and in concert with the juvenile involved, defied and disobeyed the order. His conduct in this respect prejudiced, frustrated, and defeated the appellate process being lawfully pursued by the parents of the juvenile.

Respondent accordingly is adjudged in contempt of this court. He is fined $300 and assessed the costs of this contempt proceeding.

Petition for rehearing denied November 29, 1973.