## IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| EVERETT HANGAR, LLC, a Washington limited liability company, | No. 77842-1-I |
| Respondent, | DIVISION ONE |
| v. | |
| KILO 6 OWNERS ASSOCIATION, a Washington nonprofit corporation; KILO SIX, LLC, a Washington limited liability company; HISTORIC HANGARS, LLC, a Washington limited liability company; HISTORIC FLIGHT FOUNDATION, a Washington nonprofit corporation; and JOHN SESSIONS, an individual, | UNPUBLISHED OPINION |
| Appellants. | FILED: November 5, 2018 |

LEACH, J. — Historic Hangars LLC and Historic Flight Foundation (collectively the Museum) challenge the trial court's order finding the Museum in contempt. The Museum claims that the trial court must implicitly find that it intended to disobey a court order before finding it in contempt, which the trial court did not do. But a defendant who intentionally acts contrary to a court order, with actual or constructive knowledge of the order's existence and effect, intentionally disobeys that order. The Museum does not contest its knowledge of the order's existence and effect nor does it claim that its intentional acts did not violate the trial court's order. We affirm.

## BACKGROUND

This lawsuit involves neighboring lots 11, 12, and 13 at the Snohomish County Airport (Paine Field) in Everett. Snohomish County (County) owns the underlying land and leases it to each party, individually. The lessees of lots 11 and 12 own the hangars constructed on them. In May 2007, Kilo Six LLC leased the area now comprising lots 11, 12, and 13. It assigned its interest in lot 11 to Historic Hangars LLC, which subleased lot 11 to the Historic Flight Foundation (the Foundation). The Foundation holds public and private events on the exterior lot 11 ramp and the Paine Field ramp and uses lot 13, with Kilo Six's permission, for public parking and events.

John Sessions is the managing and sole member of Historic Hangars and Kilo Six. He is also the president, chief executive officer, sole director, and sole member of the board of directors of the Foundation.

Everett Hangar LLC, a subsidiary of Weidner Investment Services Inc., leases lot 12 and owns the aircraft hangar on it. Weidner conducts its flight operations on lot 12.

Kilo Six still owns the leasehold interest in lot 13.

To facilitate separate ownership and operation of the three lots, the County agreed to execute covenants, conditions. and restrictions (the CC&Rs). The CC&Rs provide for an easement to each lot for aircraft movement. Sessions is the president, treasurer, and controlling owner and director of the Kilo 6

Owners Association (Association), which is created by the CC&Rs and enforces them. The CC&Rs apply to all lessees and sublessees of lots 11, 12, and 13.

The frequency of Everett Hangar's flight operations and the Museum's events lead to "constant conflicts" between Everett Hangar and the Museum, including "a dozen serious incidents caused by these conflicts in the past six years." In February 2015, Everett Hangar sought injunctive relief to protect its easement rights to the Kilo 7 taxiway providing access from its hangar to the airport runway and to address and mitigate safety and security concerns created by the Museum's activities on lots 11 and 13.

After a bench trial, the trial court concluded that the CC&Rs provided Everett Hangar an express easement right for movement of its airplanes and a recognized safety and security right. It granted Everett Hangar an injunction, finding that defendants, the Association, Kilo Six, Historic Hangars, and the Foundation, violated those rights.

The defendants appealed. In an unpublished opinion, this court reversed a portion of the trial court's injunctive relief and remanded to the trial court to enter additional findings of fact about its attorney fees award to Everett Hangar.[1] On remand, the trial court entered an amended injunction and the supplemental findings.

---

[1] Everett Hangar, LLC v. Kilo 6 Owners Ass'n, No. 73504-7-I, slip op. at 30-31 (Wash. Ct. App. Aug. 8, 2016) (unpublished), http://www.courts.wa.gov/opinions/pdf/735047.pdf, review denied, 187 Wn.2d 1007 (2017).

The amended permanent injunction enjoined only the Museum from specific activities. It prohibited the Museum from placing, parking, or maintaining any objects within a specified area or blocking Everett Hangar's access to the west or east exits to the Kilo 7 taxiway. It also barred the Museum from allowing people to enter described areas at specific times or access lot 12 unless permitted by the CC&Rs or Everett Hangar. It further enjoined the Museum from propping open any security gate, door, or entry point on lots 11 or 13 without a security guard immediately present at all times.

In October 2017, Everett Hangar asked the court to find the Museum in contempt, claiming that it committed multiple violations of the amended injunction. The trial court found a total of seven violations of the injunction. It imposed sanctions of $5,000 per violation. At the Museum's request, the trial court reconsidered and reduced its sanctions award to the statutorily authorized maximum of $2,000 per incident. The Museum appeals the trial court's contempt order.

## STANDARD OF REVIEW

An appellate court reviews contempt rulings for an abuse of discretion.[2] A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons.[3]

---

[2] Moreman v. Butcher, 126 Wn.2d 36, 40, 891 P.2d 725 (1995).
[3] Moreman, 126 Wn.2d at 40.

ANALYSIS

Contempt Order

The Museum correctly notes that the contempt statute requires that a party must intentionally disobey a court's order to be in contempt. It claims that the record does not show that the Museum intentionally disobeyed the amended permanent injunction and the trial court abused its discretion by finding the Museum in contempt. We disagree.

First, the Museum claims that the contempt statute requires that Everett Hangar prove the Museum intentionally disobeyed the trial court's injunction. RCW 7.21.010(1)(b) states, "'Contempt of court' means intentional . . . [d]isobedience of any lawful judgment, decree, order, or process of the court." In In re Structured Settlement Payment Rights of Rapid Settlements, Ltd.,[4] Division Three of this court confirmed that RCW 7.21.010(1)(b) requires that an individual must act intentionally to be found in contempt of court. But, in affirming the trial court's contempt order, it held that the trial court was not required to make an express written finding that defendants' violations of the injunction were intentional.[5] The court explained the challenged contempt order satisfied the statutory requirement of intentional disobedience because the defendants' "acts and omissions identified by the contempt order as violations were supported by evidence that established their

---

[4] 189 Wn. App. 584, 604-05, 359 P.3d 823 (2015).
[5] Rapid Settlements, 189 Wn. App. at 605.

inherently intentional character."[6] It held that the trial court's implicit finding that defendants' acts and omissions were intentional satisfied the statute.[7] Further, although chapter 7.21 RCW does not define "intentional," the contempt statute requires that a defendant must have actual or constructive knowledge of the "existence and substantive effect of the court's order or judgment."[8]

Second, the Museum claims that the court's findings do not show the "inherently intentional character" of the Museum's conduct. The Museum does not challenge the trial court's findings; it claims only that the court did not implicitly find that it intentionally violated the injunction. Because we treat unchallenged findings of fact as true on appeal, we accept the trial court's findings.[9] The trial court found that the Museum violated paragraphs 4 and 5 of the injunction. Paragraph 4 prohibits the Museum from

> allowing, permitting or suffering any person, including an officer, agent, employee, invitee and guest of each of them, to enter upon or gain access to Lot 12 from its properties, except to the extent permitted by the applicable Covenants, Conditions and Restrictions for Kilo 6 Hangars, or by other agreement with the Plaintiff.

The trial court found the Museum violated paragraph 4 of the injunction on four occasions:

> a. On July 15, 2017, the Defendants' flight museum ("the Museum") hosted a barbecue on the airside of Lot 11, during which

---

[6] Rapid Settlements, 189 Wn. App. at 605.
[7] Rapid Settlements, 189 Wn. App. at 605.
[8] In re Estates of Smaldino, 151 Wn. App. 356, 365, 212 P.3d 579 (2009) (citing In re Koome, 82 Wn.2d 816, 821, 514 P.2d 520 (1973)).
[9] Davis v. Dep't of Labor & Indus., 94 Wn.2d 119, 123, 615 P.2d 1279 (1980).

dozens of individuals were walking out on the Lot 11 ramps, viewing vintage aircraft. While some Museum personnel were visible on the ramp wearing yellow vests during this event, one Museum guest was allowed to walk unescorted by security from Lot 11 over onto the corner of the hangar belonging to Everett Hangar, on the Lot 12 ramp.

b. On August 10, 2017, a man walked unescorted from Defendants' Lot 11 directly onto the Lot 12 ramp without permission, and entered inside of the open hangar belonging to Everett Hangar. Afterward, he was seen by Plaintiff's staff returning to the Museum on Lot 11.

c. On August 18, 2017, a man walked unescorted from Defendants' Lot 11 directly onto Everett Hangar's Lot 12 ramp without permission, and continued out to the Everett Hangar Learjet on the ramp. The man identified himself as a Museum guest but had no security escort and was not wearing a visitor badge. He repeatedly sought entry into the aircraft. He was finally turned away by Everett Hangar's pilots and returned to the [M]useum.

d. On September 1, 2017, Defendants concede that one of their guests entered into Lot 13, the unimproved parking lot next to Plaintiff's Lot 12, and walked past the bicycle fencing enclosing Lot 13 onto the airside of Lot 12, and traversed Everett Hangar's ramp, using it as a shortcut to reach the Museum on Lot 11.

The trial court also found that the Museum committed three violations of paragraph 5 of the injunction. Paragraph 5 bars defendants from "propping open any security gate, door or entry point on the Premises of Lots 11 or 13 unless a security guard is immediately present at the gate at all times." The trial court found "on July 15, 2017, August 10, 2017 and September 11, 2017 . . . , the gate for Lot 13 parking lot was left open to the public, unlocked, and no gate attendant was immediately present. Defendants presented no evidence to rebut these facts."

The Museum contends that because it adopted policies and procedures to ensure compliance with the injunction, it intended to comply and could not have intentionally violated the injunction. It explained that the Museum does not permit its guests to access the lot 11 airside ramp unless escorted by a properly trained Museum guide. And the Museum trains its guides to prohibit access to the ramp without escort and to keep guests off the neighboring lot 12 airside ramp. It also posts signs on doors to airside spaces stating, "Escort Required." But the Museum presented no evidence that it monitored compliance with this training during its events.

And the Museum does not contest that it had knowledge of the existence and effect of the injunction. In fact, it claims that it implemented policies to comply with the injunction. It also makes no claim that it did not intend its challenged acts. For example, it makes no claim that it accidentally left a gate unlocked, that third parties unlocked a gate and left it unattended by a security guard, or that the unauthorized individuals found on lot 12 were not its guests. Because the Museum had the required knowledge and the trial court found that on seven separate occasions it violated two provisions of the injunction, the trial court implicitly found the Museum intentionally disobeyed its order. This satisfies RCW 7.21.010(1)(b)'s requirement that an entity must act intentionally to be found in contempt of a court order. The trial court did not abuse its discretion by finding the Museum in contempt of the injunction.

## Attorney Fees

Both the Museum and Everett Hangar request attorney fees on appeal under the CC&Rs and RAP 18.1. RAP 18.1(a) allows a reviewing court to award a party reasonable attorney fees if applicable law grants a party the right to recover them. Here, the CC&Rs state, "In any action to enforce the provisions of this Declaration or Association rules, the prevailing party shall be entitled to recover all costs, including, without limitation, reasonable attorneys' fees and court costs, reasonably incurred in such action." Because the injunction arose from alleged violations of the CC&Rs, we award Everett Hanger attorney fees on appeal as the substantially prevailing party, subject to its compliance with RAP 18.1(d).

## CONCLUSION

The Museum does not contest that it had knowledge of the existence and effect of the amended permanent injunction. Nor does it challenge the trial court's findings that it violated the injunction on seven separate occasions. Implicit in the trial court's unchallenged findings is the Museum's intentional

disobedience of the amended injunction. The trial court did not abuse its discretion by finding the Museum in contempt of this injunction. We affirm.

_Leach, J._

WE CONCUR:

_Dwyer, J._                    _Appelwick, C.J._