**SOUTHWESTERN BELL TELEPHONE COMPANY, Appellant,**

v.

**OKLAHOMA CORPORATION COMMISSION and State of Oklahoma, Appellees.**

No. 83179.

Supreme Court of Oklahoma.

Dec. 15, 1994.

As Corrected on Limited Grant of Rehearing April 4, 1995.*

* Kauger, V.C.J., concurred in part and Wilson, C.J., and Watt, dissenting from the limited grant of rehearing.

Melanie S. Fannin, Roger K. Toppins, Charles J. Scharnberg, Oklahoma City, for appellant.

Lawrence R. Edmison, Maribeth D. Snapp, Leslie Wilson Pepper, Okl. Corp. Com'n, Oklahoma City, for appellees.

SUMMERS, Justice.

The Corporation Commission issued Order No. 380024 in Cause No. RM 930000090, and thereby promulgated rules that required telephone companies to upgrade their service, upgrade their networks, and provide lifeline service. The Order also provided for wide area calling plans. Southwestern Bell Telephone Company (SWBT) appealed, seeking review of the Order. SWBT then sought before the Commission a stay of the newly adopted rules pending the present appeal. The Commission denied the stay, and SWBT seeks a stay of the Order from this Court.

SWBT argues that the stay is mandatory pursuant to Okla. Const. Art. 9 § 21. Article 9 § 21 states in pertinent part that:

> Upon the giving of notice of appeal from an order of the Corporation Commission, the Commission, if requested, shall suspend the effectiveness of the order complained of until the final disposition of the order appealed, and fix the amount of suspending or supersedeas bond.

This language clearly states that the Commission shall stay an order, if requested, conditioned upon a suspending bond. The Commission argues that because of statutes that amended the Constitution it now may not stay an order that creates a rule.

Article 9 § 35 of the Oklahoma Constitution gives the Legislature the power to alter, amend, revise, or repeal Art. 9 §§ 18 to 34, inclusive.[1] In 1993 the Legislature amended

---

1. Okla. Const. Art. 9 § 35 states:
   Power of the Legislature
   After the second Monday in January, nineteen hundred and nine, the Legislature may, by law, from time to time, alter, amend, revise, or repeal sections from eighteen to thirty-four, inclusive, of this article, or any of them, or any amendments thereof: Provided, That no amendment made

the Oklahoma Administrative Procedures Act (OAPA):

> "The Corporation Commission shall be required to comply with the provisions of Article I of the Administrative Procedures Act except for subsections A, B, C and F of Section 303 of this title and Section 306 of this title. *To the extent of any conflict or inconsistency with Article I of the Administrative Procedures Act, pursuant to Section 35 of Article IX of the Oklahoma Constitution, it is expressly declared that Article I of the Administrative Procedures Act is an amendment to and alteration of Sections 18 through 34 of Article IX of the Oklahoma Constitution.*" (emphasis added)

75 O.S.Supp.1993 § 250.4(A)(2), effective July 1, 1993. The question now becomes whether the amended Article I of the OAPA contains provisions inconsistent with Art. 9 § 21.

Article I of the OAPA is codified at 75 O.S.1991 §§ 250.2–308.2, as subsequently amended. The Commission relies upon two sections of Article I, §§ 308.2 and 306. Section 308 states in part:

> Rules shall be valid and binding on persons they affect, and shall have the force of law unless amended or revised or unless a court of competent jurisdiction determines otherwise. Except as otherwise provided by law, rules shall be prima facie evidence of the proper interpretation of the matter to which they refer.

75 O.S.1991 § 308.2(C).

This statute plainly states that rules are valid until a court determines otherwise. The Commission argues that such language means that the Commission (or court) may not stay the effect of a rule until the Com-

mission (or court) finally adjudicates a suit challenging the rule.

The Commission also relies upon § 306, which contains language similar to § 308.2:

> "Rules promulgated pursuant to the provisions of the Administrative Procedures Act are presumed valid until declared otherwise by a district court of this state or the Supreme Court." § 306(C).

Section 306 also provides for challenging an administrative rule by way of a declaratory judgment action in the District Court. § 306(A) and (D).

The Commission's arguments may be summarized as saying (1) that the sections together prohibit District Courts from granting stays in declaratory judgment actions attacking administrative rules, and (2) further prohibit the Commission and the Supreme Court from granting stays in appeals from Commission rules. We must first take note of some basic principles underlying this controversy.

Declaratory judgments may be sought in a District Court to challenge an administrative rule. 75 O.S.1991 § 306. We have in numerous cases affirmed trial court declaratory judgments granting temporary and permanent injunctive relief.[2] We have explained that a declaratory judgment is an appropriate remedy when a person is adversely affected by an invalid statute and is threatened with its enforcement. *State ex rel. Board of Examiners in Optometry v. Lawton,* 523 P.2d 1064, 1065–1066 (Okla.1974). Because of the nature of such a suit courts use temporary injunctions to restrain the enforcement of statutes and ordinances in order to protect property rights pending resolution of a con-

under authority of this section shall contravene the provisions of any part of this Constitution other than the said sections last above referred to or any such amendments thereof.

**2.** *Shadid v. Oklahoma Alcoholic Beverage Control Bd.,* 639 P.2d 1239, 1242 (Okla.1982), (granting injunctive and coercive relief in a declaratory judgment action may be proper under the circumstances); *Independent School Dist. No. 89 of Okla. County v. Oklahoma City Federation of Teachers,* 612 P.2d 719, 720, 724 (Okla.1980), (issuance of a temporary injunction in a declaratory judgment action affirmed); *Pettigrew v. Denwalt,* 431 P.2d 333 (Okla.1967), (temporary restraining order followed by a declaratory judg-

ment and an injunction affirmed). *See also Nucholls v. Board of Adjustment of City of Tulsa,* 560 P.2d 556 (Okla.1977), (Supreme Court affirmed declaratory judgment of district court and injunction restraining Board from enforcing ordinance); *State ex rel. Board of Examiners in Optometry v. Lawton,* 523 P.2d 1064 (Okla.1974), (Supreme Court affirmed declaratory judgment and injunction against Board). *Cf. Oklahoma Publishing Co., v. City of Moore,* 682 P.2d 754, 757 (Okla.1984), (judgment for defendant reversed and trial court directed to grant the necessary relief in action seeking declaratory judgment and injunctive relief).

troversy. *Anderson v. Trimble*, 519 P.2d 1352, 1356 (Okla.1974) *cert. denied*, 419 U.S. 995, 95 S.Ct. 308, 42 L.Ed.2d 269 (1974). Courts have historically used their equitable powers to give parties temporary relief from the enforcement of challenged rules, ordinances, and statutes, so that rights are protected during litigation.

■■■ A stay suspends or arrests a proceeding, and is effective as to the parties to the proceeding. *DLB Energy Corp. v. Oklahoma Corporation Commission*, 805 P.2d 657, 662 (Okla.1991); *In re Koome*, 82 Wash.2d 816, 514 P.2d 520, 523 (1973). A stay pursuant to Art. 9 § 21 suspends or arrests the effect of a Commission proceeding as to the party appealing to this Court.[3]

■■ The parties agree that this Court exercises appellate jurisdiction pursuant to Okla. Const. Art. 9 § 20 in this proceeding. That provision states in part:

An appeal from an order of the Corporation Commission affecting the rates, charges, services, practices, rules or regulations of public utilities, or public service corporations, shall be to the Supreme Court only....

The Supreme Court's review of appealable orders of the Corporation Commission shall be judicial only,....

This section shows that the Supreme Court possesses appellate jurisdiction to review rules and regulations of the Commission, and that this review is judicial in nature. See *Turpen v. Oklahoma Corporation Commission*, 769 P.2d 1309, 1317 (Okla.1988) where we explained our judicial review over an appeal of a rate proceeding. When this Court stays an appealed Commission order that stay is a type of judicial process.

■■ Similarly, when the Commission issues an order and thereby stays the effect of a Commission order on appeal as to an appealing party that stay order is judicial in character. In other words, the Art. 9 § 21 stay is based upon the Commission exercis-

ing its discretion, and determining the proper bond for a particular appeal. Such is an exercise of an adjudicative power, and not legislative or executive. See *Monson v. State ex rel. Oklahoma Corporation Commission*, 673 P.2d 839, 843 (Okla.1983) where we contrasted an act that is legislative in character with an exercise of an adjudicatory power. The decision on the amount of a bond calls for an adjudicative inquiry into the circumstances, i.e., the nature of the order being stayed and the proper amount for the protection of the competing interests. The Commission's exercise of this Art. 9 § 21 adjudicatory power is not contrary to the OAPA.

■ The Commission points out that a rule is presumed valid until judicially determined otherwise. So too are statutes. *Strelecki v. Oklahoma Tax Commission*, 872 P.2d 910, 917 (Okla.1993). But such presumption does not strip a District Court of its power to grant a party temporary equitable relief from the threatened enforcement of a challenged statute in a declaratory judgment proceeding. Similarly, the presumed validity of a rule does not strip from the Commission its adjudicatory power to stay the effect of a rule as to a party appealing that rule to this Court. The presumed validity of a rule refers to the burden of establishing its invalidity that is placed upon the complaining party. *Toxic Waste Impact Group, Inc. v. Leavitt*, 755 P.2d 626, 630 (Okla.1988); *J. Brotton Corp. v. Oklahoma Alcoholic Beverage Laws Enforcement Commission*, 822 P.2d 683, 686 (Okla.1991); *Hart v. Oklahoma Alcoholic Beverage Control Bd.*, 412 P.2d 142, 150 (Okla.1966). The presumed validity of a rule does not alter adjudicatory powers of courts or the Commission to grant stays.

The language of § 308.2 provides that rules have the effect of law. We have recently held that a valid rule has the force and effect of law. *Indiana Nat. Bank v. State Dept. of Human Services*, 857 P.2d 53, 60 (Okla.1993); *Coppola v. Fulton*, 809 P.2d

---

**3.** We note that the Commission appears to equate SWBT's request for a stay with a complete injunction upon the enforcement of the challenged rules as to others not before the Court in this proceeding. In a judicial (or quasi-judi-

cial) proceeding the scope of relief is limited to those who are parties to the proceeding. *Ford v. Ford*, 766 P.2d 950, 954 (Okla.1988). This jurisdictional limitation applies to temporary relief such as a stay.

1291, 1296 n. 21 (Okla.1991); *Toxic Waste Impact Group, Inc. v. Leavitt,* 755 P.2d 626, 630 (Okla.1988). We did not so hold based on any statute, but on earlier opinions. *Texas Oklahoma Exp. v. Sorenson,* 652 P.2d 285, 287 (Okla.1982); *Rotramel v. Public Serv. Co.,* 546 P.2d 1015, 1017 (Okla.1975). We have also stated that rules of the Commission have the effect of law. *Henry v. Corporation Commission of State of Okla.,* 825 P.2d 1262, 1267 n. 11 (Okla.1990); *Forest Oil Corp. v. Corporation Commission of Oklahoma,* 807 P.2d 774, 787 n. 40 (Okla.1990); *Ashland Oil, Inc. v. Corporation Commission,* 595 P.2d 423, 426 (Okla.1979).

We view the language of § 308.2 as Legislative recognition of this judicially-established principle. We decline to adopt the Commission's view which would elevate administrative rules above statutes, and thereby place rules beyond the power of a District Court (or the Commission) to stay pending judicial resolution of a controversy. Thus the language of § 306 and § 308.2 does not prohibit a District Court, this Court, nor the Commission from staying the applicability of a rule or statute as to a party before it.

The Commission also argues that the OAPA contains no provision for a stay, and that such silence strips the Commission and the Courts from staying the effect of a rule pending appeal. We disagree. In *Scripps–Howard Radio, Inc. v. Federal Communications Commission,* 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229 (1942) the U.S. Supreme Court explained the importance of a judicial stay during an appeal.

> No court can make time stand still. The circumstances surrounding a controversy may change irrevocably during the pendency of an appeal, despite anything a court can do. But within these limits it is reasonable that an appellate court should be able to prevent irreparable injury to the parties or to the public resulting from the

premature enforcement of a determination which may later be found to have been wrong. It has always been held, therefore, that, as part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal.

*Id.* 316 U.S. at 9–10, 62 S.Ct. at 879–80, footnote omitted. The importance of a stay is not lessened even when an appeal is from an act of an administrative agency and the issuance of the stay discretionary. The Court went on to say:

> If the administrative agency has committed errors of law for the correction of which the legislature has provided appropriate resort to the courts, such judicial review would be an idle ceremony if the situation were irreparably changed before the correction could be made.
>
> The existence of power in a reviewing court to stay the enforcement of an administrative order does not mean, of course, that its exercise should be without regard to the division of function which the legislature has made between the administrative body and the court of review. 'A stay is not a matter of right, even if irreparable injury might otherwise result to the appellant. It is an exercise of judicial discretion. The propriety of its issue is dependent upon the circumstances of the particular case.'

*Id.* 316 U.S. at 10–11, 62 S.Ct. at 880, citations omitted.

After explaining the importance of a stay to judicial review the Court concluded that such importance would "compel the assumption that Congress would not, without clearly expressing such a purpose, deprive the Court of Appeals of its customary power to stay orders under review." *Id.* 316 U.S. at 11, 62 S.Ct. at 880.[4] The same may be said with

---

4. *Scripps-Howard* appears to have withstood the test of time. *See Sampson v. Murray,* 415 U.S. 61, 74, 94 S.Ct. 937, 945, 39 L.Ed.2d 166 (1974), (the authority to grant a stay exists even though not expressly conferred by the statute which confers appellate jurisdiction over agency decisions); *Arrow Transportation Company v. Southern Railway Company,* 372 U.S. 658, 671 n. 22, 83 S.Ct. 984, 991 n. 22, 10 L.Ed.2d 52 (1963), (the power

to issue a stay to preserve the status quo is incidental to a court's jurisdiction to review final agency action, and will not be denied as an incidental appellate power in the absence of a clear congressional purpose to withhold that power); *Williams v. U.S. Merit Systems Protection Board,* 15 F.3d 46, 49 (4th Cir.1994), (a federal court's power to issue a stay will be curtailed only by express language from Con-

regard to legislative enactments and appellate review in our state courts. Legislative silence on judicial stays in Article I of the OAPA does not deny to courts nor the Commission the power to grant them.

We conclude that the OAPA, as amended in 1993, has not revoked the Commission's stay power pursuant to Okla. Const. Art. 9 § 21, and the Commission continues to own that power to stay the enforcement of a rule as to a party properly challenging the rule by an appeal to this Court. Okla. Const. Art. 9 § 21.

Parties in a court action may obtain, in the proper circumstances, temporary equitable relief from the threatened enforcement of a challenged statute or administrative rule. SWBT is treated the same as other parties, and may obtain an adjudicative stay of rules it has challenged. When SWBT presented its motion for a stay the Commission merely ruled that it could not issue a stay, and did not reach the usual issues resolved on a motion for stay such as the amount of a suspending bond. See *MCI Telecommunications Corp. v. State*, 823 P.2d 351, 353–354 (Okla.1992), where the Commission granted a stay to MCI and U.S. Sprint contingent upon a suspending bond. The Commission must determine the amount of the bond.

■ SWBT argues that network upgrades and rate changes are required by the rules challenged here, and that the same changes are required in SWBT's Commission case PUD 662. SWBT further argues that it has pledged a $350,000,000 corporate bond in PUD 662 to insure compliance with PUD 662 and that a further bonding requirement is

not necessary to insure compliance with this appeal and the underlying rules.

■ The proceeding before us is separate from PUD–662. To insure compliance with this Commission order on appeal SWBT must provide a suspending bond as determined by the Commission. Whether the bond in PUD–662 may be amended to include this proceeding and still protect the ratepayers and insure compliance in PUD–662 is a decision for the Commission to make in the first instance. See *Wells Fargo & Co. Express v. State*, 45 Okla. 115, 144 P. 1021 (1914), *appeal dismissed*, 242 U.S. 662, 37 S.Ct. 114, 61 L.E. 550 (1916) where this Court affirmed the Commission's order for suspending bonds to stay an order prescribing rates, rules, and regulations applicable to all intrastate express business in Oklahoma. Pursuant to Okla. Const. Art. 9 §§ 20, 21, the Commission is hereby directed to determine the proper suspending bond for the challenged rules in this appeal and issue the appropriate stay.

LAVENDER, V.C.J., and SIMMS, HARGRAVE, OPALA, SUMMERS, JJ., concur.

KAUGER, J., concurs in part, dissents in part.

ALMA WILSON and WATT, JJ., dissent.

HODGES, C.J., disqualified.

OPALA, Justice, concurring.

The court holds today that the Corporation Commission's [Commission] decision under review is *subject to the mandatory supersedeas provisions* of Art. 9, § 21, Okl. Const.[1]

---

gress); *V.N.A. of Greater Tift County, Inc. v. Heckler*, 711 F.2d 1020, 1027 (11th Cir.1983), (stays are to prevent irreparable injury resulting from the premature enforcement of an agency decision); *Sheehan v. Purolator Courier Corporation*, 676 F.2d 877, 884 (2d Cir.1982), (federal court had power to maintain the status quo by injunction pending review of agency action); *State v. Norene*, 457 P.2d 926 (Alaska 1969), (issued stay that had the effect of exempting a permit holder from the enforcement of state statutes pending the appeal of an injunction); *Gering v. Brown Hotel Corporation*, 396 S.W.2d 332, 337 (Ky.App. 1965), (court may change effective date of law or administrative order only in the form of provisional relief excusing immediate compliance

pending judicial review). See also 2 C. Koch, *Administrative Law and Practice*, § 8.19 (1985) where the author explains the several well established methods to satisfy the need to prevent an agency from acting while a controversy is being litigated).

**1.** The pertinent terms of Art. 9, § 21, Okl. Const., are:

"Upon the giving of notice of appeal from an order of the Corporation Commission, the Commission, if requested, *shall suspend the effectiveness of the order* complained of until the final disposition of the order appealed, and fix the amount of suspending or supersedeas bond...." (Emphasis added.)

Concluding that nothing in Art. I of the Administrative Procedures Act [APA][2] contravenes the agency's constitutional duty to suspend the effectiveness of its rulings, the court directs the Commission to stay its decision now under review upon the utility's [Southwestern Bell] posting a § 21 suspending bond.

I concur *generally* in today's pronouncement, but write *separately* to emphasize that, in the exercise of its Art. 9, § 35, Okl. Const.,[3] power to repeal or amend certain sections of the Constitution, the Legislature must *explicitly* spell out (a) in the statutory text what is amended or repealed, leaving no doubt as to the identity of provisions that stand replaced or are cast away, and (b) in the title of the act the purpose to be accomplished by the amendatory or repealing language.

# I

## IN THE EXERCISE OF ITS POWERS UNDER ART. 9, § 35, OKL.CONST., THE LEGISLATURE MAY CHANGE THE TEXT OF THE CONSTITUTION *ONLY* BY AN *EXPLICIT* AMENDMENT OR REPEAL OF ITS PROVISIONS

### A.

The terms of Art. 9, § 35, Okl. Const.,[4] authorize the Legislature to "alter, amend, revise or repeal" §§ 18 through 34 of Art. 9, Okl. Const. When the lawmaking body invokes its § 35 authority, *it does not craft ordinary legislation.* Rather, it changes our fundamental law by either repealing the constitutional provisions or reducing them (in an altered form) to a mere statutory dimension. Unlike a statute, the Constitution *cannot* be *amended or repealed by implication.*[5] The State's highest law *continues* to stand with undiminished force until *explicit legislative will* is manifested to subordinate some amendable section (§§ 18 through 34), in whole or in part, to a contrary legislative norm.[6] *Explicit legislation* is that which *specifically* and *clearly* identifies the portion of each constitutional section intended to be altered or replaced by the enactment and shows the extent of its change. When this process is utilized the text that remains unamended survives all legislative changes to continue in force as a part of our fundamental law.

In the case now before us, the Legislature, using its § 35 powers, *declared generally* that the APA'S Art. I rulemaking provisions, *to the extent they may be viewed as inconsistent with Art. 9, §§ 18 through 34,* would function as an *amendment or alteration* of some *unspecified* provisions in the enumerated sections of our fundamental law. *75 O.S.Supp.1988 § 250.4(A)(2).*[7] This attempt

---

**2.** For the Art. I rulemaking process see 75 O.S. 1991 §§ 250.2 et seq.

**3.** The terms of Art. I, § 35, Okl. Const., are: "After the second Monday in January, nineteen hundred and nine, *the Legislature may,* by law, from time to time, *alter, amend, revise, or repeal sections from eighteen to thirty-four,* inclusive, of this article, or any of them, or any amendments thereof: Provided, That no amendment made under the authority of this section shall contravene the provisions of any part of this Constitution other than the said sections last above referred to or any such amendments thereof." (Emphasis added.)

**4.** For the pertinent terms of Art. 9, § 35, Okl. Const., see *supra* note 3.

**5.** *OG & E v. Corporation Commission,* Okl., 543 P.2d 546, 550–551 (1975).

**6.** *OG & E, supra* note 5 at 550–551. In *Oklahoma Cotton Ginners' Ass'n v. State,* 174 Okl. 243, 51 P.2d 327, 332–333 (1935), the court observed: "It would seem that the Legislature if it intended to amend the fundamental instrument on which the government of this state was erected, *would have expressed itself in no uncertain terms as to the character of its action."* (Emphasis supplied.)

**7.** The terms of 75 O.S.Supp.1988 § 250.4(A)(2) provided:

"Effective July 1, 1988, the Corporation Commission shall be required to comply with the provisions of Article I of the Administrative Procedures Act *except for subsections A, B, C and F of Section 303 of this title and Section 306 of this title. To the extent of any conflict or inconsistency with Article I of the Administrative Procedure Act, pursuant to Section 35 of Article IX of the Oklahoma Constitution, it is expressly declared that Article I of the Administrative Procedures Act is an amendment to and alteration of Sections 18 through 34 of Article IX of the Oklahoma Constitution."* (Emphasis added.)

*to amend or repeal the Constitution is plainly ineffective.* Neither § 250.4(A)(2) nor any other Art I provision (of which it is a part) makes *explicit* reference to the supersedeas command in Art. 9, § 21. *Explicit* legislation *effectively* repealing § 21 would have to (a) identify the precise constitutional text intended to be displaced (stating unequivocally what § 21 provisions are supplanted by enactment) and (b) either provide textual replacement for the content of the cast-away provisions or expressly declare them extinguished *in toto.* Until the Legislature so *explicitly amends* § 21, that section's force as a constitutional command must stand undiminished.[8]

Judicial laxity in enforcing compliance with the strictures that govern the legislative process intended to effect constitutional changes would be much too costly for the symmetry of our legal system. In this case, for example, the terms of Art. 9, § 20, Okl. Const., the section that generally governs appeals from the Commission to this court, *which were not replaced in any Art. I provisions of the APA,* would be deemed to have been effectively *extinguished by mere implication.*

The italicized portions were added by a 1988 amendment. (Okl.Sess.L.1988, Ch. 292, § 2). The 1990 and 1993 amendments make no substantive changes in § 250.4(A)(2).

8. *OG & E, supra* note 5 at 550–551, teaches that *no powers will be deemed conferred upon the Commission which are inconsistent with its constitutional duties, unless the Legislature's compliance with the strictures that govern the § 35 amending (or repealing) process has been shown.*

9. *OG & E, supra* note 5 at 550–551.

10. The terms of Art. 5, § 57, Okl. Const., state in pertinent part:
"Every act of the Legislature shall embrace but one subject, *which shall be clearly expressed in its title,....*" (Emphasis added.)
*Allen v. Retirement Sys. For Just. & J.,* Okl., 769 P.2d 1302, 1305 (1988); *OG & E, supra* note 5 at 550–551; *see also Bernstein v. Connecticut Fire Insurance Company,* Okl., 315 P.2d 232, 233 (1957); *Bandy v. R.H. Fulton and Company,* Okl., 312 P.2d 875, 879 (1957); *Atchley v. Board of Barber Examiners of State,* 208 Okl. 453, 257 P.2d 302, 305 (1953); *Atlas Life Ins. Co. v. Rose,* 196 Okl. 592, 166 P.2d 1011, 1014 (1946).

11. The purpose of this fundamental-law provision is to inform the people and the legislators of the enactment's scope. *In Re Initiative Petition*

Endorsing such a cavalier approach would place an imprimatur on *constitutional repeal or amendment by implication*—a doctrine expressly repudiated by this court's extant § 35 jurisprudence.[9] This example *alone* should make it abundantly clear that *nothing* in the Constitution can *safely* be cast aside by implication. Legislative amendment or repeal must *explicitly and narrowly* target the changes intended, leaving nothing to speculation or conjecture.

**B.**

The terms of Art. 5, § 57, Okl. Const.,[10] require that an enactment's title embrace the subject of the law's amendment.[11] If, when amending § 250.4(A)(2) in 1988, the Legislature did indeed intend to relieve the Commission of its duty to comply with the mandatory supersedeas requirement, it should have *explicitly* stated this purpose both in the body and the title of its act. *This it failed to do.*[12] Although § 250.4(A)(2) was fatally defective (for a flawed title), the act's infirmity did nonetheless become cured by the section's later incorporation into the 1991 decennial compilation.[13] Had the body of the act *ex-*

*No. 347, State Question No. 639,* Okl., 813 P.2d 1019, 1027 (1991); *John Deere Plow Co. v. Owens,* 194 Okl. 96, 147 P.2d 149, 152 (1944); *Oklahoma Cotton Ginners', supra* note 6, 51 P.2d at 332.

12. The title of the 1988 amendment (Okl.Sess.L. 1988, Ch. 292, § 2) provides in pertinent part:
"AN ACT RELATING TO STATUTES AND REPORTS; AMENDING 75 O.S. 1981, ... SECTION 12, CHAPTER 207, O.S.L. 1987, AS AMENDED BY SECTION 125, CHAPTER 236, O.S.L. 1987, ... AND SECTION 22, CHAPTER 207, O.S.L. 1987 (75 O.S.SUPP.1987, SECTIONS ... 250.4 ...), WHICH RELATE TO THE ADMINISTRATIVE PROCEDURES ACT; MODIFYING TERMS; ADDING TO AND MODIFYING EXEMPTIONS; ... PROVIDING FOR RESOLUTION OF CERTAIN CONFLICTS...."

13. By the command of Art. 5, § 43, Okl. Const., the Legislature *must* update every ten years the body of our statutory law. If the substance of a statute is not otherwise prohibited by the Constitution, an act that is infirm because of a defective title will nonetheless stand as effective *after it* has been carried into a decennial compilation. This is so because an incorporation into the decennial edition operates by relation back to cure proce-

*plicitly* referred to the § 21 mandatory supersedeas provisions and declared them either repealed *in toto* or replaced by a text that clearly identified the content of the surviving provisions, the amendment (or repeal) of § 21 could stand today as an effective legislative alteration of that section's fundamental-law content.

## II

### SUMMARY

In the exercise of its § 35 power, the Legislature must, both in the body and in the title of an act, *explicitly* declare its intent to amend or repeal some identifiable provision in one of the amendable (or repealable) sections of Art. 9 (§§ 18 through 34). Its enactment, to be effective, must *specifically* refer to the provisions being repealed and leave no doubt as to what, if anything, is being substituted for the extinguished constitutional text.

Because the interposed amendment of Art. I of the APA does not comply with the strictures that govern the legislative process of changing an amendable (or repealable) section in our Constitution, it is ineffective to alter the mandatory supersedeas provisions in Art. 9, § 21, Okl. Const. *Since the § 21 command continues in force, it must control today's action in this cause.*

---

dural defects, such as title flaws, from the date of the original enactment. *Allen, supra* note 10 at 1305.

**1.** The pertinent part of art. IX, § 21 provides:

Upon the giving of notice of appeal from an order of the Corporation Commission, the Commission, if requested, shall suspend the effectiveness of the order complained of until the final disposition of the order appealed, and fix the amount of suspending or supersedeas bond....

**2.** In addition to the directives set out in the regulations challenged herein, similar directives have been spelled out in a ratemaking proceeding in 1984 and a proceeding to consider the affects of federal income tax changes. In the 1984 ratemaking proceeding PUD–662, the OCC ordered SWB to modernize and to refund 561 million dollars to ratepayers. The ratemaking order is pending before this Court in Appeal No. 80,333. In the 1986 proceeding PUD–260, initiated by the Director of the Public Utility Section to consider the affect of the federal 1986 Tax Reform Act on Oklahoma's public utilities, in-

I hence concur in the court's ruling that *gives full obedience* to the constitutional text of Art. 9, § 21.

**ALMA WILSON, Justice, with whom WATT, Justice, joins, dissenting:**

Southwestern Bell Company (SWB) contends that it is entitled to a stay of the effectiveness of three rules or regulations of the Oklahoma Corporation Commission (OCC) pursuant to art. IX, § 21, Okla. Const.[1] SWB does **not** challenge the rulemaking process—neither the validity of the adopting order nor the gubernatorial and legislative approval. SWB does **not** challenge all the regulations adopted by the order which it asks this Court to stay. SWB challenges only those regulations requiring it to modernize and upgrade the central offices in some sixty sparsely populated areas of this State, even though during the last ten years, SWB has thrice been ordered to upgrade and modernize the central offices serving these small towns and rural areas.[2] In light of the exhaustive administrative hearings already had to determine the need for modernizing and upgrading the central offices throughout the State and the inordinate delays in bringing the administrative orders for modernization and upgrading to finality, I would grant

---

cluding SWB, the OCC determined that the reductions in tax rates caused SWB to have an accumulated $30,677,167 cash surplus and ordered that the thirty million dollars be used for upgrading services to eliminate multi-party line areas and modernize central offices, rather than ordering refunds to ratepayers. On appeal, this Court reversed the order for upgrading and modernization for lack of supporting evidence and remanded for further proceedings. *State ex rel. Henry v. Southwestern Bell*, 825 P.2d 1305 (Okla. 1991). These cases remain pending before this Court and the OCC, in large part due to the tactics of SWB, of which this Court should take judicial notice. Within the last month, a former member of the OCC was convicted on a federal charge for receiving valuable consideration from SWB in return for his vote to order SWB to upgrade and modernize rather than refund the thirty million dollars to ratepayers. And, both the 1984 ratemaking proceeding and the 1986 proceeding have been seriously delayed by SWB's request for recusal of another member of the OCC due to involvement in the federal investigation which resulted in the federal criminal charge.

a stay for six month **only.**[3] A time limit on the stay will accommodate SWB in prosecuting this cause and it will allow this Court to give precedence to issues raised pursuant to art. IX, § 21.[4] Accordingly, I respectfully dissent to today's ruling.

## THE RULEMAKING PROCEEDINGS AND APPEAL.

The OCC exercised its rulemaking powers and adopted regulations delineating services to be provided by all local exchange telephone service providers in this state, pursuant to the Oklahoma Administrative Procedures Act (APA).[5] Only three of the several regulations adopted by Order No. 380024 are challenged herein: Rule 165:55-13-10, setting minimum standards of service; Rule 165:55-13-13, requiring network development service; and Rule 165:55-13-14, requiring lifeline service. The regulations were submitted to the Governor and the Legislature. The Governor and the Legislature have approved the regulations and, in accordance with the APA, today the regulations are final and effective and have the binding force of law.

The chronology of the rulemaking process is as follows.[6] On August 12, 1993, the OCC issued a notice of inquiry relating to minimum standards for telecommunications services. The notice advised that comments would be received through October 15, 1993. Technical conferences with the various local exchange companies were held. On December 10, 1993, the OCC published notice of proposed rulemaking. The rule impact statement was made available to the public. More technical conferences with various telecommunications providers were held. A public hearing was originally set for January 27, 1994, but was continued until February 3, 1994. At the public hearing, the OCC heard comments from the rural telephone cooperatives, SWB, GTE, AT & T and representatives from various communities, including Beggs, Cordell, Fairview, Hobart, Konawa, Marlow, Pauls Valley, City of Pink, Rainbow Valley and Tecumseh. On February 8, 1994, the OCC adopted the proposed regulations, including the three challenged herein, by Order No. 380024. On February 18, 1994, the regulations were submitted to the Governor, the Senate and the House of Representatives for consideration and approval or rejection. On April 4, 1994, the Governor approved the challenged regulations. On April 13, 1994, the Legislature approved the challenged regulations by its failure to disapprove, whereupon the regulations were deemed finally

3. The mandatory provision of art. IX, § 21, Okla. Const. requiring the OCC to suspend the effectiveness of its order on appeal does not prevent this Court from exercising its superintending powers over all inferior courts, agencies, commissions and boards created by law. Okla. Const., art. VII, § 4. In this appeal, SWB challenges some, but not all, of the regulations adopted by OCC Order No. 380024. That is, SWB seeks relief from three regulations rather than the entire order. I would treat the petition in error as an application to assume original jurisdiction and petition for declaratory and extraordinary relief raising constitutional issues. An original action in this Court for redress of harm caused by a regulation of the OCC would be consistent with the provisions of the provisions of Oklahoma Administrative Procedures Act, infra. In exercising its original jurisdiction, this Court is free to control the litigation with time restrictions.

4. Article IX, § 21 of the Oklahoma Constitution provides, in part:
   All such appeals, affecting rates, charges, practices, rules or regulations of any public utility, or of any public service corporation, receiver or trustee engaged in the public utility business, shall have precedence upon the docket of the Supreme Court, irrespective of its place in session, next after habeas corpus cases, to the end that a plain, speedy and efficient remedy may be afforded to such parties.
   A six month time period would also be sufficient to accomplish any legislative correction of the attempted amendments to Article IX made by the 1988 legislative session, as discussed infra., as the Legislature may determine.

5. 75 O.S.1991, §§ 250, et. seq. The several amendments to the APA subsequent to the 1991 recodification are not applicable herein.

6. Order No. 380024 sets forth the chronology prior to its adoption. The remainder of the rulemaking process is published in the Oklahoma Register, the state's official publication for agency rules. The Oklahoma Register is maintained by the Administrative Rules Section of the Office of the Secretary of State. 75 O.S.1991, § 250.9.

adopted.[7] On June 13, 1994, the regulations became effective.

On March 2, 1994, after the challenged regulations were submitted to the Governor and the Legislature, SWB initiated this cause. On May 4, 1994, after the challenged regulations were deemed finally adopted but prior to their effective date, the OCC denied SWB's motion to suspend effectiveness of Order No. 380024. On May 16, 1994, SWB filed a Motion to Stay Pending Appeal requesting this Court to stay the effectiveness of the rulemaking order, OCC Order No. 380024.

### THE PUBLIC HEARING EVIDENCE.

Concluding that the mandatory provisions of art. IX, § 21, Okla. Const. entitles SWB to the requested stay, the majority opinion directs the OCC to determine the amount of bond which SWB must post, explaining: "The decision on the amount of a bond calls for an adjudicative inquiry into the circumstances, i.e., the nature of the order being stayed and the proper amount for the protection of the competing interests." If the majority opinion contemplates that the sixty small towns and rural areas with obsolete central offices are "competing interests," then determination of the amount of monetary protection against the harm which may be suffered is an impossibility and can only be conjecture.

The transcript of the public hearing is replete with the pleas from witnesses, who appeared before the OCC as representatives of our smaller communities, for upgrading of their telephone services. The OCC was advised of fire departments that can not received emergency calls reporting fires because of multi-party lines; chambers of commerce that cannot keep, much less attract, businesses because of the inadequacy of forty and fifty year old central offices; health providers who desperately need modern telephone services to deliver health care services in rural areas. Legislators appeared at the public hearing, submitted petitions for upgraded telephone services from their constituency and encouraged the OCC to adopt the proposed regulations. SWB and the other local exchange telephone service providers

appeared. The OCC was advised that the rural telephone cooperatives are already in compliance with the proposed regulations because they have invested in the upgrading throughout the last decade, with exception for two coops that have time schedules approved by the OCC for completion of the upgrade over the next year or so. General Telephone Company advised the OCC that it has thirty-eight central offices that are not modernized; that it has no objection to the proposed regulations; but it will request an exception to the time schedule and request funding through the ratemaking process. SWB objected to the proposed regulations, but simultaneously admitted that it had some sixty central offices that needed modernization. SWB submitted that its principal reasons for objecting to the regulations are that the OCC is dictating technology rather than services and the OCC must provide for funding before it can require the improvement.

Before the OCC, SWB and the other telephone communication providers in this State have clearly admitted the need for modernization and upgrading of central offices. The OCC has attempted to accomplish the needed modernization and upgrading through its rulemaking, ratemaking and adjudicatory orders. I would not generate further delay in bringing those orders to finality. I would direct the OCC to conduct an evidentiary hearing, upon ten days notice, giving SWB an opportunity to show cause why the amount of the bond should not be thirty million dollars adjusted for interest and inflation since 1986 and to show cause why the information gathered in the public hearing had on February 3, 1994, should not be admitted as evidence to support the ordered modernization and upgrading in PUD–260. Such orders are consistent with the requirements of art. IX, § 18, Okla. Const. and will advance the modernization and upgrading issue toward final resolution.

### ARTICLE IX, § 21, OKLAHOMA CONSTITUTION AND THE OKLAHOMA ADMINISTRATIVE PROCEDURES ACT.

SWB contends it is entitled to a stay because the OCC's failure to suspend Order

---

7. 75 O.S.1991, § 308.1.

No. 380024, adopting the challenged regulations, is directly contrary to the art. IX, § 21, Okla. Const. The OCC responds that the mandatory stay provisions in art. IX, § 21 have been altered by amendments to the APA and the effectiveness of duly adopted and approved agency regulations is not subject to stay.[8]

Article IX, § 21 of the Oklahoma Constitution mandates that the OCC suspend the effectiveness of its order upon 1) notice of an appeal from the order and 2) request of the appellant.[9] By a series of amendments to the APA, the Legislature expressed its intent to amend art. IX, § 21. In 1987, effective July 1, 1988, the Legislature placed the OCC under Article I [rulemaking proceedings],

but not Article II [individual proceedings], of the APA.[10] In the same measure, the 1987 Legislature added § 306 declaring that rules and regulations adopted and promulgated in accordance with the APA "are presumed valid until declared otherwise by a district court or the Supreme Court" and authorizing declaratory judgment actions in the district court to challenge the validity or applicability of a rule.[11] It also added § 308.2 declaring that duly adopted and promulgated rules shall be valid and binding on persons they affect "unless a court of competent jurisdiction determines otherwise."[12] During the next legislative session, § 250.4 was amended, adding the language in subsection (A)(2),[13] which expressly provides that incon-

**8.** SWB points out that this Court has already rejected the argument that art. IX, § 21 has been altered by the APA, in *Public Service Company of Oklahoma v. Oklahoma Corporation Commission*, No. 81,518, a pending appeal. This Court's order directing the OCC to comply with Art. IX, § 21 and determine "whether a bond is required in this particular circumstance and to fix the amount of the bond, if appropriate" in the PSO case has no precedential value herein. Accordingly, were I writing for the majority, I would expressly reject this meritless position taken by SWB.

**9.** See footnote 1, supra, for the pertinent provisions of art. IX, § 21, Okla. Const.

**10.** 1987 Okla. Sess. Laws, ch. 207, § 12, 75 O.S.Supp.1987, § 250.4, which provided, in part:

A. 1. Except as is otherwise specifically provided in this subsection, each agency is required to comply with Article I of the Administrative Procedures Act.
2. The Corporation Commission shall comply with Section 18 of Article 9 of the Oklahoma Constitution. In addition, the Corporation Commission shall comply with the filing and transmittal requirements of Sections 251 and 254, the publication requirements of Section 255 and the provisions of Section 302 of Title 75 of the Oklahoma Statutes.
Effective July 1, 1988, the Corporation Commission shall be required to comply with all provisions of Article I of the Administrative Procedures Act.
B. As specified, the following agencies or classes of agency activities are not required to comply with the provisions of Article II of the Administrative Procedures Act:
4. The Oklahoma Corporation Commission;

**11.** 1987 Okla. Sess. Laws, ch. 207, § 17. Subsection (C) of § 306 places the burden of proof

upon the adopting agency to show 1) its authority to adopt the rule, 2) the rule is consistent with statutory law, 3) the rule is not contrary to the constitution, and 4) the rule was adopted in accordance with the APA.

**12.** 1987 Okla. Sess. Laws, ch. 207, § 23. Section 308.2 was subsequently amended adding a new subsection (B) which authorizes the commencement of a proceeding to challenge a rule for non-compliance with the provisions of the APA within two years from the effective date of the rule. 1991 Okla. Sess. Laws, ch. 326, § 11. The applicable text of § 308.2. Title 74 O.S.1991, § 308.2(C) reads:

C. Rules shall be **valid and binding** on persons they affect, and shall have the force of law unless amended or revised or **unless a court of competent jurisdiction determines otherwise.** Except as otherwise provided by law, rules shall be prima facie evidence of the proper interpretation of the matter to which they refer.
[Emphasis added.]

**13.** 1988 Okla. Sess. Laws, ch. 292, § 2. The 1988 version is recodified at 75 O.S.1991, § 250.4(A)(2) and was not affected by the amendments to that section by 1993 Okla. Sess. Laws, ch. 330, § 30. The 1988 version of § 250.4(A)(2) reads:

A. 1. Except as is otherwise specifically provided in this subsection, each agency is required to comply with Article I of the Administrative Procedures Act.
2. Effective July 1, 1988, **the Corporation Commission shall be required to comply with the provisions of Article I of the Administrative Procedures Act except** for subsections A, B, C and F of Section 303 of this title and **Section 306** of this title. To the extent of **any conflict or inconsistency with Article I of the Administrative Procedures Act, pursuant to**

sistencies between the APA and art. IX, § 21 are to be considered as alterations of art. IX, § 21 and expressly excepts the OCC from § 306 but not from § 308.2.

Reading § 250.4 together with § 308.2,[14] it is obvious that the Legislature intended that the OCC will adopt and promulgate rules within the confines of the APA and that duly adopted rules of the OCC shall be valid and binding on the persons they affect unless otherwise determined by a court of competent jurisdiction. Further reading §§ 250.4 and 308.2 together with § 306, it is equally obvious that the Legislature intended that challenges to duly adopted rules of the OCC will be brought in the Supreme Court rather than the district court and that the duly adopted rules will be valid and binding unless the Supreme Court determines otherwise. And, the only meaning to be gleaned from reading §§ 250.4, 306 and 308.2 together with art. IX, § 21, is that a person affected by a valid and binding regulation of the OCC, who challenges the regulation in the Supreme Court, is not entitled to a stay unless the Supreme Court decides otherwise.[15]

The Oklahoma Constitution, art. IX, § 35 permits the Legislature to alter §§ 18 through 34 of art. IX.[16] Heretofore, the Legislature has altered the provisions of art. IX with direct additions to and/or deletions from the language of those constitutional sections.[17] It has also altered the provisions of art. IX with declaration that the entire act is an amendment to and alteration of Section 18 through Section 34 of article IX without direct change to the constitutional language, similar to the 1988 legislation involved herein, but with a clear expression of intent in the title to the measure.[18]

## OTHER RELATED APPEALS.

SWB also urges that the challenged regulations, requiring it to upgrade or modernize services, should be stayed pending appeal to change existing law, we are of the opinion it would have expressly so stated.

---

> Section 35 of Article IX of the Oklahoma Constitution, it is expressly declared that Article I of the Administrative Procedures Act is an amendment to and alteration of Sections 18 through 34 of Article IX of the Oklahoma Constitution.
> [Emphasis added.]

**14.** Statutes dealing with same subject should be read together to determine intent of a particular section. *TWA v. McKinley*, 749 P.2d 108 (Okla. 1988).

**15.** Such a reading would be consistent with *Bray v. Cap Corp.*, 571 P.2d 1224, 1227 (Okla.1977) and *Atchison, T. & S.F. Ry. Co. v. State*, 27 Okla. 329, 117 P. 328, (1910). Rejecting appellant's claim that the OCC must stay its order in *Bray*, this Court determined that appeals from forced pooling orders are governed by statute and not by the provisions of art. IX, § 21. In the *Atchison Railway* case, administrative orders requiring information to be filed were held not subject to appeal and supersedeas under art. IX, § 21. See also, *Garrison v. State*, 420 P.2d 474, 477, (Okla.1966) wherein we said:

> There is no evidence either in this record or in the legislative history of the Act to indicate that the Legislature, by amending § 651 intended to amend Art. 9, §§ 20 and 22 and make the mandatory provisions of § 651 applicable to appeals from the Corporation Commission. It must be assumed that the Legislature was aware of our prior decisions holding that § 651 did not apply to appeals from the Commission. Had the Legislature intended to

**16.** Article IX, § 35 of the Oklahoma Constitution reads:

> After the second Monday in January, nineteen hundred and nine, **the Legislature may, by law,** from time to time, **alter,** amend, revise, or repeal **sections eighteen through thirty-four, inclusive of this article, or any of them,** or any amendments thereof; Provided, That no amendment made under authority of this section shall contravene the provisions of any part of this Constitution **other than the sections last above referred to or any such amendments thereof.**
> [Emphasis added.]

**17.** 1941 Okla. Sess. Laws, p. 544, amending §§ 20, 21, 22, 24 and 34, art. IX, Okla. Const.; and, 1985 Okla. Sess. Laws, ch. 302, § 1, amending § 18, art. IX, Okla. Const.

**18.** 1953 Okla. Sess. Laws, p. 484, captioned "Constitutional Amendment" "Constitution of the State of Oklahoma" "Article IX—Corporations" enacting the Rural Telephone Cooperative Act. I agree with the concurring opinion herein—the provisions of art. IX, § 21 cannot be amended by legislative implication nor by judicial rules of construction. Our rules of constitutional construction do not permit the alteration of the constitution by statutory reference and implication. As discussed in the concurring opinion, the 1988 Legislature, choosing not to directly amend the language of art. IX, the bill title should have clearly identified the measure as

be consistent with this Court's stay orders issued in pending appeal No. 80,333 from 1984 ratemaking order. According to SWB, the substance of the challenged regulations is at issue in appeal No. 80,333.[19] Although not argued by SWB, the substance of the challenged regulations is also at issue in PUD–260 remanded to the OCC in *State ex rel. Henry v. Southwestern Bell*, supra.

This argument approaches the absurd. Were we to recognize similarity of issues as a basis for a stay, we would effectively halt the OCC's constitutional duties and powers to continuously supervise, regulate and control public utilities in the performance of their public duties and their charges therefor.[20] Additionally, I find tacit approval of the OCC's continuing regulation of the telecommunication providers, in this Court's remand in *State ex rel. Henry v. Southwestern Bell*, supra.

## CONCLUSION

An overview of the multiple appeals by SWB from OCC orders pending before this Court warrants cautious, deliberate consideration of SWB's stay request herein. SWB, as a public utility, is charged with a public duty to indiscriminately provide adequate telephone communication services throughout its designated area.[21] The record in this cause establishes a recognized and serious need for the modernization and upgrading that has been ordered. There is no substantive basis for SWB to continue avoiding the needed upgrade in the services in many small communities in Oklahoma. Further, SWB's

argument that it will be monetarily deprived if the modernization and upgrading occurs before the OCC provides for funding is hollow. SWB, currently holding more than a half a billion dollars of ratepayers, is protected multi-fold. Accordingly, this Court should limit the time within which SWB can further delay fulfillment of its public duty. Six months is more than sufficient to litigate this cause to finality.

**Pamela J. CORBIT, now Pamela Harris, Appellant,**

v.

**Garry WILLIAMS and State of Oklahoma, ex rel. Department of Human Services, Appellees.**

**No. 82733.**

Supreme Court of Oklahoma.

May 23, 1995.

---

a constitutional amendment as was done in the 1953 Rural Telephone Cooperative Act.

**19.** Upon SWB's request in the 1984 ratemaking proceeding [PUD–662], the OCC suspended its orders that SWB refund in excess of five hundred million dollars to ratepayers, but refused to suspend its orders for network modernization. On November 9, 1992, this Court temporarily suspended and stayed the OCC orders [Order No. 367868, the ratemaking order, and Order No. 368282, the order staying the refund orders and refusing to stay the network modernization orders] and suspended the effectiveness of those orders upon SWB depositing $561,000,000.00 in an interest-bearing escrow account and submitting financial statements to the OCC as it may require pursuant to its art. 9, § 21 authority.

**20.** Okla. Const., art. IX, § 18. Notwithstanding the similarity of issues, this Court refused to grant a stay because SWB did not seek a stay before the OCC on appeal No. 79,531. In that appeal, SWB sought a stay of the OCC orders relating to wide area calling plans (WACP). Like network upgrading, expansion of wide area calling plans (WACP) is involved in the 1984 ratemaking proceeding [PUD–662] and a separate proceeding [PUD–1177] to consider expansion of WACP around Oklahoma City, Tulsa and Lawton. Were I writing for the majority, I would expressly reject this meritless position taken by SWB.

**21.** Okla. Const., art. IX, § 18; *Arkansas Louisiana Gas Company v. Sun Oil Company*, 554 P.2d

Beverly Quarles Watts, Edmond, for appellant.

M. Joe Crosthwait, Jr., Midwest City, for appellee Garry Williams.

Randy Henning, Oklahoma City, for appellee Dept. of Human Services.

SUMMERS, Justice.

This is an appeal from an order denying a motion to vacate a judgment. Because the order appealed from is on a form titled "Court Minute", and we have not been furnished with an order of the trial court meeting the form for appealable orders required by the recent statutory changes, we dismiss the appeal as premature.

The trial was for back-due child support, modification of child support, and contempt. The court modified child support, and determined the amount owed by Defendant Williams to the State of Oklahoma for A.F.D.C. support expended by the State. It determined that the Defendant owed Plaintiff $5,145.70 for child support arrearage. The order was filed on September 9, 1993.

On October 8, 1993 Plaintiff filed a combined motion for new trial and motion to vacate the order of September 9, 1993. Plaintiff argued that because her motion was filed within thirty days of the order the court could vacate, modify, or amend the order. On November 16, 1993 the trial court filed an order that denied the motion to vacate. The petition in error was filed in this Court on December 15, 1993.

■ Our consideration of this appeal must be limited to the trial court's order in denying the motion to vacate. A motion for new trial authorized by 12 O.S.1991 § 653 will not extend the time to appeal from the judgment if the motion is filed after the ten-day statutory period for such motions. *Estate of*

*Heimbach,* 827 P.2d 170 (Okla.1992).[1] Plaintiff's counsel on appeal (different from that at trial) is correct in stating that the post-judgment motion did not extend the time to appeal the judgment of September 9, 1993. This appeal is limited to challenging the trial court's order of November 16, 1993 on Plaintiff's motion to vacate the judgment. *Schepp v. Hess,* 770 P.2d 34, 36 n. 2 (Okla.1989).

The order denying the motion to vacate is on a printed form titled "Court Minute". We have explained that recent statutory changes effective October 1, 1993 made minute entries an unappealable form for a filed judgment. *Mansell v. City of Lawton,* 877 P.2d 1120 (Okla.1994); *Aven v. Reeh,* 878 P.2d 1069 (Okla.1994). We requested a response from Plaintiff on the applicability of *Mansell.*

---

14 (Okla.1976); *Fretz v. City of Edmond,* 168 P. 800 (1917).